<span style="float:right">MONTGOMERY<br>v.<br>TATE.</span>

(1) See the last case in this volume.

————— •—◦—•—• —————

## MONTGOMERY *v.* TATE.

At common law, a husband became entitled by marriage to an estate in the lands of his wife during their joint lives; and such estate was as absolute during that period, as if acquired by conveyance or in any other mode; and it was subject to sale on execution against him, and might be conveyed by him.

The statute of 1838 did not change the law in this respect.

The death of the husband leaving the wife surviving, would, *it seems,* terminate such an estate conveyed by a sheriff; but the deed would be good for whatever interest the husband had, for the lifetime of the wife.

APPEAL from the *Fayette* Circuit Court. <span style="float:right">*Tuesday, June 28.*</span>

WORDEN, J.—This was an action by the appellee against the appellant, to recover the possession of a certain piece of land described in the complaint. There are two paragraphs in the complaint, one claiming a fee simple, and the other a life estate in the land.

Answer in denial. Trial by jury; verdict and judgment for plaintiff, over a motion for a new trial.

By a bill of exceptions it appears, that on the trial the plaintiff proved, *prima facie,* a title to the land in herself, either in fee simple or for life; but whether her evidence established, *prima facie,* a fee simple interest in her, or a life estate merely, it is wholly unnecessary to determine for the purposes of this case; therefore we shall express no opinion in reference to it.

After the plaintiff became seized of the premises, she intermarried with one *John B. Tate,* who is still living, and

the husband of the plaintiff. Afterwards, in *September*, 1840, *Bates* and *Abrams* recovered a judgment in the *Fayette* Circuit Court against *William Tully* and the said *John B. Tate*, for the sum of 177 dollars, 60 cents, besides costs of suit, on which an execution was afterwards issued, which was levied upon the property in controversy, as the property of said *John B. Tate*, "for and during the natural life of *Ursula Tate*, wife of said *John B. Tate;*" and the property, on a *venditioni exponas*, was afterwards sold, according to law, to satisfy the judgment and costs.

*James Miller* and *Sanford P. White* became the purchasers at the sheriff's sale, and received his deed for the premises, conveying to them the interest of said *John B. Tate* therein during the lifetime of his wife, *Ursula Tate*. This took place in 1842. *Miller* and *White* afterwards conveyed to *Elisha Vance*, and *Vance* to the defendant, *Montgomery*.

On these facts, the Court charged the jury, "that if they believed the evidence, it would be their duty to find for the plaintiff."

The defendant asked several charges, to the effect that if the jury believed the propositions relied upon by defendant in support of his title (substantially those contained in the evidence), it would be their duty to find for the defendant. These were refused, and the defendant excepted to the ruling of the Court in giving and refusing the charges.

At common law, by the marriage of *Ursula* with *John B. Tate*, he became entitled to an estate in her lands during their joint lives. This estate is as absolute and perfect in him during that period, as if acquired by conveyance, or in any other mode. It is subject to sale on execution against him, and may be conveyed by him. *Vide* 2 Kent's Comm. 131; *Butterfield* v. *Beall*, 3 Ind. R. 203; *The Junction Railroad Co.* v. *Harris*, 9 *id.* 184.

But it is contended that the law of 1838 (R. S. 1838, p. 276, § 1), in force at the time of the sale in question, subjecting property to sale on execution, does not authorize such estates to be sold on execution. It provides, "that the personal and real estate of every individual," &c., "in-

cluding his, her, or their goods, chattels, lands, tenements, and hereditaments, be and the same are hereby made subject to execution," &c.

The counsel say that, " Nowhere do they find any law authorizing the selling of the wife's interest in land for the debts of her husband."

No interest of the wife is sold; for the entire estate in the land is, by the marriage, vested in the husband during their joint lives. During their joint lives she has no estate in the lands. Such estate being vested in the husband, it is very clearly within the terms of the statute, and subject to sale on execution against him.

Subsequent legislation has, perhaps, changed this rule. See Acts of 1847, p. 45, and 1 R. S. p. 321, § 5. But these acts can have no influence on the case at bar, as the sale here took place before either of them was enacted.

A contingency may arise that will abridge the term conveyed by the sheriff's deed, to a less period than that of the life of said *Ursula*. The death of said *John B.* leaving her surviving him, would, perhaps, terminate the estate conveyed; but this does not at all vitiate the deed. It would be good for whatever interest he had in the premises, not extending beyond the lifetime of said *Ursula*.

Both husband and wife being still alive, the term conveyed by the sheriff's deed is not yet expired, and the defendant's title to premises derived from such sale, still subsists.

The ruling of the Court was wrong, and the judgment must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*B. F. Claypool,* for the appellant.

*J. S. Reid,* for the appellee.